FIFTH DIVISION
SEPTEMBER 19, 2008

1-07-2675

| | | |
|---|---|---|
| In re PETITION OF L.M. AND M.M. | ) | Appeal from the |
| TO ADOPT M.J.A. | ) | Circuit Court of |
| (L.M. and M.M.,) | ) | |
| | ) | Cook County. |
| Petitioners-Appellees, | ) | |
| | ) | 05 COAD 950 |
| | ) | |
| M.A., | ) | Honorable |
| | ) | Patrick McGann, |
| Respondent-Appellant. | ) | Judge Presiding. |

JUSTICE TULLY delivered the opinion of the court:

The circuit court of Cook County found respondent, M.A., to be an unfit parent on the ground of depravity under section 1(D)(i) of the Adoption Act (750 ILCS 50/1(D)(i) (West 2002)). Respondent was found to be depraved because he was convicted of the offense of predatory criminal sexual assault of a child. See 720 ILCS 5/12-14.1(a)(1) (West 1998).  The circuit court further found the respondent to be unfit by his lack of contribution to the financial welfare of his son (750 ILCS 50/1(D)(n)(2)(ii) (West 2002)); his failure to communicate with his son and his failure to plan for the future of his son (750 ILCS 50/1(D)(n)(1)(ii) (West 2002)). The court subsequently terminated respondent's parental rights. Respondent appeals. We affirm.

The petition filed against respondent asserted seven grounds upon which the court should find M.A. unfit.  The circuit court found that petitioners sustained their burden on four counts and found respondent unfit under sections 1(D)(i) and 1(D)(n) of the Adoption Act.  A finding of parental unfitness warranting termination of parental rights will stand if supported by any one of the statutory grounds set forth in the Adoption Act.  In re Daphnie E., 368 Ill. App. 3d 1052, 859 N.E.2d 123 (2006).

Background

The minor at issue in this petition, M.J.A., was born on October 28, 2002. His biological mother, L.M., one of the petitioners herein, and his father M.A., the respondent herein, were not married at the time of his birth.

L.M. and M.A. met in an Internet chat room in November 2001. At the time, L.M. lived in the eastern part of the United States and M.A. lived with his mother in Skokie, Illinois. M.A.'s living arrangement was necessitated by a condition of his bond on felony charges that were then pending in the Eighteenth Judicial Circuit, Du Page County. Approximately six weeks after their initial meeting, L.M. traveled to Illinois to meet M.A. in person. Shortly thereafter, L.M. leased an apartment in the same building where M.A. lived with his mother. M.A. and L.M. soon began living together.

In February 2002, L.M. learned she was pregnant. L.M. testified that she informed M.A., who was less than enthusiastic, counseling L.M. to terminate her pregnancy. M.A. disputes this fact but the trial court found L.M.'s testimony to be more credible based upon comments M.A. made in correspondence sent to the other woman in M.A.'s life. The parties continued to cohabit in the apartment until August or September of 2002 when M.A. returned to his mother's apartment. M.A. returned to L.M.'s apartment shortly before the birth of M.J.A. in order to give the impression that they were a happy couple to L.M.'s mother and sister, who were coming to Chicago to help with the birth and early child-rearing responsibilities.

The relationship of M.A. and L.M. and ultimately M.J.A. was greatly impacted by a relationship M.A. had with another woman. Approximately 11 years before meeting L.M.,

2

M.A. began a relationship with Frances F. Ms. F lived in a motel with her two children, J.D.F. and A.F. M.A. moved in with Ms. F. and her children and ultimately M.A. and Ms. F had a child of their own, K.A. It is clear from the testimony that M.A. had a deep affection for Ms. F's children and treated them as if he were their father. The family moved into a townhome. After the birth of K.A., Ms. F. did not return to work and the family was supported solely by M.A.

In late 2000 or early 2001, Du Page County sheriff's deputies went to the family townhome to investigate an allegation that A.F. had been sexually molested by M.A. M.A. agreed to accompany the deputies to the station to clear up the matter. In a videotaped interrogation, M.A. initially denied the allegations were true. After a short period of time and because he had an important project at work, M.A. agreed to get the matter off his chest. M.A. then explained in a calm and clear manner how A.F. had walked in while he was watching a pornographic movie on his computer so he took it upon himself to explain to A.F. the actions of the adults on the pornographic Internet site. This included viewing pornographic films depicting various forms of heterosexual and same sex-sexual activity. M.A. also explained the functioning of the male sex organ and allowed A.F. to fondle his penis and placed it in her mouth. A.F. was approximately nine years old at the time this occurred. M.A. denied ever touching her female sex organ with his finger.

M.A. was convicted of two counts of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1)(West 1998)) and aggravated criminal sexual abuse (720 ILCS 5/12-16 (c)(1)(West 1998)) in June 2003. He was sentenced to 23 years in the Illinois Department of Corrections.

Discussion

Under the Juvenile Court Act of 1987 (705 ILCS 405 1-1 (West 2006)), the involuntary termination of parental rights involves a two-step process. First, there must be a showing, based on clear and convincing evidence, that the parent is "unfit," as that term is defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2002)). If the court makes a finding of unfitness, the court then considers whether it is in the best interests of the child that parental rights be terminated. See 705 ILCS 405/2-29(2) (West 2002); In re C.N., 196 Ill. 2d 181, 209, 752 N.E.2d 1030 (2001). Although section 1(D) of the Adoption Act sets forth numerous grounds under which a parent may be deemed "unfit," any one ground, properly proven, is sufficient to enter a finding of unfitness. See 750 ILCS 50/1(D) (West 2002); In re C.W., 199 Ill. 2d 198, 210, 766 N.E.2d 1105 (2002).

In this case, as previously stated, the trial court found respondent unfit on several grounds including depravity. We will discuss the depravity issue first. According to the State, the fact that respondent was convicted of the offense of predatory criminal sexual assault of a child triggers a rebuttable presumption of depravity which can only be overcome if respondent shows, by clear and convincing evidence, that he is not depraved.

Respondent asserts that the plain language of section 1(D)(i) demonstrates that the offense of predatory criminal sexual assault of a child does not trigger a rebuttable presumption of depravity. Indeed, respondent argues that if the legislature intended for predatory criminal sexual assault of a child to trigger the presumption, it would have listed that offense in the statute.

At the time this petition was filed, Section 1(D)(i) of the Adoption Act provided in relevant part:

"D. 'Unfit person' means any person whom the court shall find to be unfit to have a child, without regard to the likelihood that the child will be placed for adoption. The grounds of unfitness are any one or more of the following ***:

* * *

(i) Depravity. Conviction of any one of the following crimes shall create a presumption that a parent is depraved which can be overcome only by clear and convincing evidence: (1) first degree murder in violation of paragraph 1 or 2 of subsection (a) of Section 9-1 of the Criminal Code of 1961 or conviction of second degree murder in violation of subsection (a) of Section 9-2 of the Criminal Code of 1961 of a parent of the child to be adopted; (2) first degree murder or second degree murder of any child in violation of the Criminal Code of 1961; (3) attempt or conspiracy to commit first degree murder or second degree murder of any child in violation of the Criminal Code of 1961; (4) solicitation to commit murder of any child, solicitation to commit murder of any child for hire, or solicitation to commit second degree murder of any child in violation of the Criminal Code of 1961; or (5) aggravated criminal sexual assault in violation of Section 12-14(b)(1) of the Criminal Code of 1961." 750 ILCS 50/1(D)(i) (West 2002).

The Illinois Supreme Court addressed this issue in In re Donald A.G., 221 Ill. 2d 234, 850 N.E.2d 172 (2006), where the State acknowledged that predatory criminal sexual assault of a child is not an offense enumerated in the statute. However, the State nevertheless maintained that the legislature intended to create a rebuttable presumption of depravity to be applied to the

offense of predatory criminal sexual assault of a child, but made a drafting error. The Illinois Supreme Court agreed reasoning:

"Reading section 1(D)(i) as a whole, it becomes readily apparent that the legislature intended for the presumption of depravity to apply, in most instances, to those adults who committed crimes against children. Indeed, the legislature created a presumption of depravity where a parent committed first or second degree murder of any child; attempted or conspired to commit first or second degree murder of any child; or solicited someone else to commit first or second degree murder of any child. See 750 ILCS 50/1(D)(i) (West 1998). In enacting this statute, the legislature's paramount concern was to protect children from parents who have harmed other children. Thus, it stands to reason that the legislature would intend to apply a rebuttable presumption of depravity to those adults who have committed a sex offense against a child. Significantly, the offense of predatory criminal sexual assault of a child, by definition, always involves an unlawful sex act between an adult and a child, whereas the conduct prescribed under the aggravated criminal sexual assault statute would, in most instances, involve an adult defendant and an adult victim. Compare 720 ILCS 5/12.14.1(a)(1), (a)(2), (a)(3) (West 1998) with 720 ILCS 5/12-14(a), (b), (c) (West 1998).

Under only one circumstance does the offense of aggravated criminal sexual assault exclusively apply to a child, and that circumstance occurs when the accused is under the age of 17. See 720 ILCS 5/12-14(b)(i), (b)(ii) (West 1998). However, it would be absurd for us to conclude that the legislature intended to create a presumption of depravity for those individuals who fall within that subsection of the aggravated criminal sexual assault

6

statute to the exclusion of those individuals who committed the offense of predatory criminal sexual assault of a child. If that were the case, then the legislature intended to create a presumption of depravity for a juvenile under the age of 17 who commits aggravated criminal sexual assault, i.e., an act of sexual penetration with a child under the age of 9 or between the ages of 9 and 12 (720 ILCS 5/12-14(b)(i), (b)(ii) (West 1998)), but did not intend for that presumption to apply to an adult who is 17 years of age or older who commits predatory criminal sexual assault of a child, i.e., an act of sexual penetration with a child under the age of 13 (720 ILCS 5/12-14.1(a)(1) (West 1998)). Under that rationale, a 15-year-old who commits an act of sexual penetration with a 12-year-old would be subject to a presumption of depravity under the Adoption Act, while respondent, who was over 18 years old when he committed an act of sexual penetration against D.B., a five-year-old, would escape the presumption. It seems unlikely that the legislature would exclude the offense of predatory criminal sexual assault of a child from its presumption under the Adoption Act when that statute exclusively applies to accused individuals over the age of 17, who are more likely to face termination proceedings than younger individuals." In re Donald A.G., 221 Ill. 2d at 248-49.

The court concluded that the legislature made an inadvertent drafting error in stating that the presumption of depravity applied to the offense of aggravated criminal sexual assault. The court found that the legislature simply cited to an outdated version of the Criminal Code wherein the offense of predatory criminal sexual assault of a child was included in the statutory definition of aggravated criminal sexual assault. In other words, the Court concluded that the legislature intended the presumption of depravity to apply to the offense of predatory criminal sexual

7

assault. 1-07-2675

Accordingly, the court concluded that the presumption applied to respondent, as he was convicted of the offense of predatory criminal sexual assault of a child prior to the fitness proceeding at issue.

In this case then we conclude that respondent here is subject to the rebuttable presumption of depravity based on his conviction for predatory criminal sexual assault of a child. The question before us, then, is whether respondent presented clear and convincing evidence to refute the State's prima facie case of depravity. Respondent attempts to refute the depravity allegation by denying that he committed the underlying offense. Respondent insists that he did not show A.F. pornographic web sites; rather, he searched the Internet for high school sex education sites to show A.F. cartoon characters performing sex acts. Respondent also points out that A.F. recanted her allegations. We think it is important to note that A.F. did not recant the fact that she was sexually abused. After telling social workers in great detail what respondent had done, A.F. later testified that it was not respondent who had committed the acts but rather a man named "Rob." A.F. also testified that her brother blamed her for breaking up the family. She further testified that she felt terrible that respondent was in jail because of what she said. It is with this background that the trial judge here concluded the victim's recantation came after pressure from her mother and her brother and the victim's recantation testimony was thus deemed incredible by the court. The trial court also found the respondent's explanation that he confessed so that he could leave the police station in order to finish a project at work was self-serving. The trial court found the respondent's continued denial of responsibility demonstrated a concern for only himself and stated that this was a consistent pattern.

Aside from refuting the facts of the criminal conviction, respondent insists the record is replete with evidence that would overcome the depravity presumption. Respondent points to the letters written by L.M. after M.A. was convicted and had been incarcerated. These letters are filled with statements conveying L.M.'s continued devotion to M.A. L.M. writes about M.J.A. and tells M.A. that he is a wonderful father. She writes of her hope that they will still have a life together as a family.

These letters do not rebut the presumption of depravity. They are disturbing in that they reflect the almost desperate hopes of a woman whose devotion was repeatedly manipulated by the respondent. While L.M. remained devoted to M.A., he wrote to her only twice. His correspondence to L.M. consisted of an entreaty for money and a perfunctory inquiry about M.J.A. followed by a request not to bring him to a contact visit. In contrast M.A. wrote numerous letters to Ms. F. We agree with the trial court that this correspondence merely demonstrates M.A.'s efforts to manipulate both women. Thus, we find that the letters written by L.M. do not demonstrate M.A.'s fitness as a parent; rather, the letters reinforce the finding of M.A.'s moral depravity.

Respondent also points to his conduct towards Ms. F's children and his interaction with M.J.A. as demonstrative of his fitness as a parent. However, the record shows scant evidence of any interest in M.J.A. and any evidence of M.A.'s devotion to Ms. F's children, J.D.F. and A.F. and his son K.A., is not enough to overcome the presumption of depravity. The evidence indicates that M.A. showed affection for the three children and supported the family yet he still engaged in sexually molesting A.F. Thus, we find the evidence of M.A.'s affection for K.A. and Ms. F's children to be insufficient to rebut the presumption of depravity.

We affirm the trial court's finding of unfitness on grounds of depravity and find that respondent's parental rights were properly terminated.

FITZGERALD SMITH, P.J., and TOOMIN, J., concur.