# Illinois Official Reports

## Appellate Court

---

### *In re M.I.*, 2015 IL App (3d) 150403

---

| | |
|---|---|
| Appellate Court Caption | *In re* M.I., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. J.B., Respondent-Appellant). |
| District & No. | Third District<br>Docket No. 3-15-0403 |
| Filed | November 20, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 10-JA-189; the Hon. Albert L. Purham, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Susan K. O'Neal, of Peoria, for appellant.<br><br>Jerry Brady, State's Attorney, of Peoria (Laura E. DeMichael-Bialon, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE O'BRIEN delivered the judgment of the court, with opinion.<br>Presiding Justice McDade concurred in the judgment and opinion.<br>Justice Schmidt dissented, with opinion. |

**OPINION**

¶ 1     The State brought a petition to terminate the parental rights of respondent J.B., the father of M.I. The trial court found J.B. unfit to care for his daughter and it was in the best interest of M.I. that his parental rights be terminated. The trial court granted the State's petition to terminate J.B.'s parental rights to M.I. He appealed. We reverse and remand.

¶ 2                                FACTS

¶ 3     The State filed a petition for wardship in July 2010, alleging that M.I. and several of her siblings were neglected based on an injurious environment. The petition included five allegations against the mother, E.I., and several allegations directed against the children's fathers. The allegation directed against respondent J.B. alleged his criminal history, which included burglary, 1983; retail theft, 1984 (2), 1985, 1992; resisting police, 1992; robbery, 1996; domestic battery, 1999; and aggravated battery, 1999 and 2002. The trial court found M.I. to be a neglected minor, made her a ward of the court and appointed the Department of Children and Family Services (DCFS) guardian. Initially, J.B. and E.I. were found fit and M.I. was placed with E.I. The trial court required J.B. to complete any necessary authorizations, cooperate with DCFS, complete a drug and alcohol assessment, participate in two drug tests per month, and take a parenting class.

¶ 4     J.B. completed a psychological evaluation. The testing results indicated that J.B. had an IQ of 58, which registered in the extremely low range, with skills ranging from a kindergarten to third grade level. His abilities were consistent with those of a young child. The examining doctor did not give J.B. any personality tests because he believed they were beyond J.B.'s capabilities. The doctor further concluded that J.B. could not parent on an independent basis. He recommended J.B. be assessed regarding his adaptive behavioral functioning and living skills and the service plans and interventions for J.B. be modified. The doctor concluded that traditional mental health services were not appropriate for J.B. and that J.B. needed an introduction to parenting class so he could learn basic parenting skills.

¶ 5     In March 2011, the State filed a motion for unfitness, alleging J.B. did not attend drug testing or participate in a drug and alcohol evaluation and refused to provide an address to his caseworker. Permanency review reports indicated that J.B. told his caseworker he was staying with friends when possible but was otherwise homeless. He provided a phone number at which the caseworker could leave a message. He completed some services but was inconsistent in visitation. The reports acknowledged that J.B. had a lower intellectual functioning and it was apparent that he could not parent in any capacity. An integrated assessment dated November 25, 2013, reflected that J.B. was homeless and lacked the ability to parent. An April 2014 permanency review report noted that J.B. had participated in the integrated assessment but was unable to parent due to developmental delays and his I.Q. He remained homeless but attended visitation with M.I. twice in December 2014, and the visits went well. As a result of J.B. missing visitation sessions, he was required to call to set up further visits. At an April 2014 permanency review hearing, the trial court found that J.B. failed to make reasonable progress.

The trial court changed the permanency goal to substitute care pending termination of parental rights and appointed counsel for J.B.

¶ 6    The State filed a petition to terminate J.B.'s parental rights in May 2014. The counts directed against J.B. alleged that he failed to make reasonable progress between August 1, 2013, and May 1, 2014, and failed to maintain a reasonable degree of interest, concern or responsibility as to M.I. 750 ILCS 50/1(D)(m)(ii), (D)(b) (West 2010). A hearing took place on the petition. Brenda Lee, the DCFS caseworker since August 2011, testified as to J.B.'s general failure to comply with the service tasks. He admittedly continued to use cannabis with no plans to stop. She did not believe substance abuse treatment would be appropriate based on his admission that he would continue using. She did not provide him referrals for various services because she did not have contact information for him. She gave J.B. information about community agencies that provided the services he needed.

¶ 7    She initially provided bus passes to J.B. for him to attend visitation and other related appointments but stopped because J.B. was not using the passes for proper purposes. As a result, he was required to first show up and she would then give him a one-way pass to return home. Lee was aware that J.B. was homeless in Pekin and her office was located in Peoria. Lee believed J.B. could maneuver the public transportation system to attend visitation and service appointments because she had seen him get on the bus and also walking about Peoria. In her view, J.B. could have sent M.I. cards and letters in spite of his low intellectual functioning, including kindergarten-age sentence comprehension level.

¶ 8    Lee was aware that J.B. had a low I.Q., with two psychiatric hospitalizations in the past five years, including suicide attempts, and was diagnosed with bipolar disease. The only special service she provided him was to discuss him restarting psychiatric services through community mental health providers. She received training on the Americans with Disabilities Act of 1990 (ADA) (42 U.S.C. § 12101 *et seq.* (2012)). She was aware there was a compliance resource person but she did not contact him because it never came up. She did not ask anyone about additional services for J.B. He had completed his parenting class so she did not look any further. Lee was not aware if DCFS had guidelines and services for homeless clients. She did not offer homemaker services to J.B. or modify any of his services.

¶ 9    The trial court stated that it considered J.B.'s low I.Q. but found him disinterested and that services could not be modified for someone who was not willing to show up. The trial court noted that J.B. was inconsistent in his visitation and did not maintain contact with DCFS. J.B. was without an address and DCFS was unable to contact him. The trial court found J.B. unfit in that he failed to make reasonable progress between August 1, 2013, and May 1, 2014, and did not display a reasonable degree of interest, concern or responsibility for M.I. A best interest hearing took place where the trial court found it was in M.I.'s best interest that J.B.'s parental rights be terminated. A termination order was entered and J.B. appealed.

¶ 10                                          ANALYSIS

¶ 11    On appeal, J.B. challenges the trial court's unfitness findings and its termination of his parental rights. He argues that the trial court improperly considered evidence outside the relevant time period in finding J.B. failed to make reasonable progress and erred in determining that he failed to maintain a reasonable degree of interest, concern or responsibility toward M.I. J.B. also argues that DCFS failed to make reasonable accommodations and services in light of his mental impairment.

- 3 -

¶ 12    There is a two-step process for the termination of parental rights. *In re Petition of L.M.*, 385 Ill. App. 3d 393, 395 (2008). The State must first prove that the parent is unfit and, if so, then must prove it is in the child's best interest to terminate the parent's rights. *Id*.; 750 ILCS 50/1(D) (West 2010); 750 ILCS 405/2-29(2) (West 2010). Grounds for termination of parental rights include the parent's failure to make reasonable progress toward the return of the child within a specified nine-month period after an adjudication of neglect or abuse and failure to maintain a reasonable degree of interest, concern or responsibility. 750 ILCS 50/1(D)(m)(ii), (D)(b) (West 2010). Any one ground of unfitness that is proven is sufficient for an unfitness finding. *In re C.W.*, 199 Ill. 2d 198, 210 (2002). We will not reverse a trial court's fitness determination unless it was against the manifest weight of the evidence. *In re D.D.*, 196 Ill. 2d 405, 417 (2001).

¶ 13    The failure to make reasonable progress is determined by an objective standard where the trial court focuses on the amount of progress toward reunification to be reasonably expected under the particular circumstances. *In re A.A.*, 324 Ill. App. 3d 227, 236 (2001). The court measures progress by the parent's compliance with the directives of the court, the DCFS service plan, or both. *Id*. (quoting *In re L.L.S.*, 218 Ill. App. 3d 444, 463-64 (1991)). To decide whether a parent has demonstrated a reasonable degree of interest, concern or responsibility for the child's welfare, the court looks at the parent's efforts to visit and maintain contact with the child. *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1064-65 (2006). Where personal visits are not possible, the court considers whether the parent called the child or sent letters and gifts. *Id.* Other pertinent parental actions include asking about the welfare of the child. *Id*. The court's focus is on the efforts of the parent rather than his success, and the court must examine the parent's conduct in the circumstances in which the conduct occurred. *In re B'yata I.*, 2014 IL App (2d) 130558-B, ¶ 31. Difficulty in obtaining transportation, poverty and other life issues needing resolution are circumstances relevant for the court's consideration. *Id*.

¶ 14    In this case, the State filed a petition for termination of parental rights on May 20, 2014, following more than three years of contact between J.B. and the assigned caseworkers and nearly three years after J.B. submitted to a psychological examination that revealed that he is mildly mentally retarded, with an I.Q. of 58. The doctor who conducted the psychological examination opined that the respondent would never be able to parent M.I. on an independent basis due to his low intellectual capacity and functioning.

¶ 15    No one disputes the findings of the psychological examination and yet the State proceeded against the respondent in its petition for termination of parental rights on the grounds set forth in section 1(D)(m)(ii), alleging that respondent failed to make reasonable progress toward the return of the minor during the 9-month period of August 1, 2013, to May 1, 2014, and section 1(D)(b), alleging that the respondent failed to maintain a reasonable degree of interest, concern or responsibility as to the minor's welfare. 750 ILCS 50/1(D)(m)(ii), (D)(b) (West 2010). The trial court found J.B. unfit on both grounds. We recognize, as does the State, that the majority of the evidence considered by the trial court in making its unfitness finding was outside the specified nine-month period cited for lack of reasonable progress. The State argues that the evidence also supported the lack of reasonable effort count and was properly considered. We disagree. Nevertheless, as the discussion below explains, the trial court's findings on either ground were against the manifest weight of the evidence.

¶ 16    We cannot accept the trial court's determination that failing to complete a task that is beyond one's intellectual capacity is the same as refusing to comply with court-ordered

- 4 -

directives and willfully not making reasonable progress toward the return of a minor child or willfully failing to maintain a reasonable degree of interest in the child. That is not to say that J.B. is able to parent the minor child, but rather, the statutory scheme in place recognizes that there are situations where, as here, through no fault, a parent lacks the sufficient mental ability necessary to be responsible for the welfare of a child. 750 ILCS 50/1(D)(p) (West 2010). The State failed to allege it as grounds for J.B.'s unfitness. The dissent attempts to characterize this argument in terms of the ADA (42 U.S.C. § 12101 *et seq.* (2012)). The dissent misses the point. We do not find it necessary to rely on the ADA for our decision since Illinois law requires the progress of the parent in these settings be measured in light of the circumstance that led to the neglect. In this case, the "circumstance" that must be considered is the respondent's mental deficiency. The record is clear that there was no consideration of how the respondent's mental retardation impacted his efforts to comply with the court's directives.

¶ 17    In making its finding that J.B. did not make reasonable progress toward reunification or maintain a reasonable degree of interest, the trial court expressly emphasized that while it considered J.B.'s intellectual disabilities, the finding relied on J.B.'s disinterest in parenting. Specifically, the trial court stated that services could not be modified for a parent who failed to show up. We disagree. Importantly, the State never provided a service plan for J.B. The only benchmarks to measure his progress or effort were the tasks the trial court assigned. The initial court order entered on October 3, 2010, required J.B. to cooperate fully with DCFS, obtain a drug and alcohol assessment, submit to two random drug screenings per month, participate in and successfully complete a parenting class, and submit to a psychological examination arranged by DCFS. We note that the respondent did submit to the psychological examination that was arranged by DCFS.

¶ 18    The caseworker for DCFS testified that the respondent failed to schedule all kinds of appointments, he failed to submit to all of the drug drops as scheduled, failed to attend all the scheduled visitations, failed to call the caseworker to make appointments, and refused to provide the caseworker with his address. Any of these failures might be sufficient to demonstrate a lack of reasonable progress or a failure to maintain a reasonable degree of interest in the minor child, if it were not for the fact that the respondent has the intellectual capacity of a kindergartener.

¶ 19    The caseworker said she did not set up any services for the respondent because he did not have a mailing address and she had to leave messages at his phone contact. She acknowledged he was homeless but considered his lack of a permanent address a reasonable explanation of why she only offered him referrals. Her solution was to give the respondent the names of social service organizations in the community that might provide services for him. Similarly, she stopped giving the respondent bus passes but said she would do so again once he started attending meetings and visitation on his own. She did not offer him drug or alcohol treatment because he told her he would continue to use cannabis. Although she was aware of the respondent's intellectual deficiencies and that he had been hospitalized several times for psychiatric issues, she did not offer respondent any homemaker services or modify the service requirements even though the report prepared following the psychological examination made express findings that modification of all service plan requirements would be necessary for the respondent. The only special service she offered was to discuss with the respondent that he should reengage in mental health services with his prior community mental health provider.

¶ 20    As the psychological examination noted, any services provided to J.B. needed to be modified to take into consideration his intellectual deficits. No modifications were made that might have allowed J.B. to be compliant with any of the tasks he was ordered to complete. The State also failed to provide an adaptive behavior functioning and living skills assessment as recommended after the psychological exam. Instead of recognizing the reality that J.B. could not independently complete these seemingly routine tasks, the permanency review reports reveal the caseworkers equated respondent's inability to complete a task with refusal to complete a task.

¶ 21    Under both definitions of unfitness alleged, the trial court was required to consider J.B.'s conduct in light of the circumstances facing him. The State did nothing to address J.B.'s particular situation. Rather, it abandoned a parent with an I.Q. of 58 to navigate the community social services network on his own and used his inability to do so as a grounds to terminate his parental rights. DCFS and the trial court completely failed to recognize J.B.'s minimal functioning level and adjust his requirements according to his circumstances. We also note that we cannot accept the dissent's suggestion to affirm the termination of respondent's parental rights because the evidence presented was sufficient to satisfy the requirements of section 1(D)(p) (750 ILCS 50/1(D)(p) (West 2010)). First we cannot do so because the State never alleged those grounds in its petition to terminate parental rights. *In re Gwynne P.*, 215 Ill. 2d 340, 349 (2005) (trial court cannot terminate parental rights on grounds not alleged in petition). Second, even in light of J.B.'s inability to independently parent M.I., there was no evidence presented that he would be unable to continue visitation with M.I., especially if he were provided the necessary accommodations to assist him. 705 ILCS 405/1-3(13) (West 2010) (parent retains residual rights and responsibilities, including the right to reasonable visitation after the transfer of legal custody or guardianship of the child). So while J.B. might be unfit, that does not necessarily mean his parental rights should be terminated. *In re Workman*, 56 Ill. App. 3d 1007, 1011 (1978) (parent retains bundle of rights until found unfit and guardian empowered to consent to adoption). We find the State failed to meet its burden of proving J.B.'s unfitness and the trial court erred in terminating his parental rights.

¶ 22    Based on the foregoing reasons, the judgment of the circuit court of Peoria County is reversed and the cause remanded.

¶ 23    Reversed and remanded.

¶ 24    JUSTICE SCHMIDT, dissenting.

¶ 25    I respectfully dissent. The majority reverses the trial court on a basis for which it has no legal authority. I would not read into the Adoption Act (750 ILCS 50/1(D) (West 2010)) a requirement that does not exist. "Where the language [of section 1(D)(m)(iii) (750 ILCS 50/1(D)(m)(iii) (West 2008))] is clear and unambiguous, courts may not read into it exceptions that the legislature did not express. [Citations.]" *In re J.L.*, 236 Ill. 2d 329, 340 (2010). Contrary to the majority's finding, until the legislature states otherwise, the State need not allege a mentally impaired parent's unfitness under section 1(D)(p) of the Adoption Act (750 ILCS 50/1(D)(p) (West 2010))–to the exclusion of other grounds for unfitness–when petitioning to terminate parental rights.

¶ 26    The majority further concludes that the trial court's findings were against the manifest weight of the evidence. *Supra* ¶ 15. The trial court was aware of respondent's intellectual deficiency and accounted for it on the record. *Supra* ¶ 9. Therefore, whether respondent failed to make reasonable progress toward the return of M.I. or failed to maintain a reasonable degree of interest, concern or responsibility in her welfare because he is intellectually incapable or because he outright refused to do so is irrelevant to this court's inquiry. The evidence established, and respondent does not dispute, that he failed to make reasonable progress toward her return from August 2013 to May 2014, and he failed to maintain a reasonable degree of interest, concern or responsibility in M.I.'s welfare. Therefore, the trial court's findings were not against the manifest weight of the evidence. I would affirm.

¶ 27                            I. The Fitness Hearings

¶ 28    At a fitness hearing, the State has the burden of proving parental unfitness by clear and convincing evidence. 705 ILCS 405/2-29 (West 2010); *In re Jordan V.*, 347 Ill. App. 3d 1057, 1067 (2004). When the State seeks to terminate someone's parental rights, each case is "*sui generis* and must be decided based on the particular facts and circumstances presented." *In re D.D.*, 196 Ill. 2d 405, 422 (2001) (citing *In re Adoption of Syck*, 138 Ill. 2d 255, 279 (1990)). The trial court's finding of unfitness will be given great deference due to its superior opportunity to evaluate the credibility of witnesses. *In re Jordan V.*, 347 Ill. App. 3d at 1067.

¶ 29    Respondent's fitness hearing took place over two sessions in December 2014 and February 2015. The State's factual basis revealed a lengthy series of hearings in the wake of M.I.'s adjudication as a neglected minor in September of 2010 through the time of the fitness hearing. From March 2011 to October 2014, there were at least nine separate hearings, most of which were for permanency. Brenda Lee, a DCFS caseworker, testified to the findings from her dispositional reports authored beginning in August 2011, when she took over as respondent's caseworker. Respondent was never found to be making a reasonable effort. The findings of the permanency hearings and Lee's dispositional reports reveal respondent's consistent failure to make reasonable progress toward the return of M.I. to a home from August 2013 to May 2014, and in maintaining a reasonable degree of interest, concern or responsibility in M.I.'s welfare throughout the proceedings.

¶ 30    Respondent never complied with the court's order or the directives from the social service agencies involved. In spite of the fact that M.I. was placed in DCFS care as a matter of immediate and urgent necessity in October 2013, respondent refused to cooperate with DCFS or facilitate his participation in services. Lee testified that respondent was given bus passes by DCFS to attend required services and visitations until he was found to be using the bus passes for reasons unrelated to attending services or visitations. She stated that respondent sporadically–at best–showed up for or scheduled visitations with M.I. and did not engage in any of the services he was ordered to complete. Respondent countered that he is bipolar and has a low I.Q., which qualifies him as mildly mentally retarded, and DCFS did not properly accommodate him as required under the ADA (42 U.S.C. § 12101 *et seq.* (2012)). Like the majority, respondent cited no specific section of the ADA or case law when asserting this counterargument.

¶ 31    Lee testified that respondent refused to provide her with a valid address throughout her tenure as his caseworker. Lee stated respondent visited the minor roughly twice a year and claimed in response that he had too much "stuff" going on to attend his scheduled visitations

with M.I. Lee also said respondent overtly refused to stop using illegal drugs, completed none of the drug tests as ordered, and reiterated he was not participating in any services. She said she alerted respondent to the services, but the referral system was stymied by his refusal to provide her with an address or cooperate otherwise.

¶ 32 During the period of August 2013 to May 2014, Lee testified that she offered respondent bus passes to attend services and visitations, but he had a grand total of three visits with M.I. during this time. She also testified that respondent had access to psychiatric services through a social service agency throughout her time as his caseworker.

¶ 33                                     II. Failure to Make Reasonable Progress

¶ 34 The trial court may only consider evidence occurring during the relevant nine-month period mandated in section 1(D)(m) in determining whether a parent has made reasonable progress toward the return of a child. *In re J.L.*, 236 Ill. 2d at 341. "Reasonable progress exists when the trial court can conclude that it will be able to order the child returned to parental custody *in the near future*." (Emphasis added.) *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1067 (2006) (citing *In re L.L.S.*, 218 Ill. App. 3d 444, 461 (1991)).

¶ 35 When DCFS finds credible evidence that a child is abused or neglected, as it did here, it must then assess a family's need for services and develop an appropriate service plan. 325 ILCS 5/8.2 (West 2010). While DCFS does not have the legal authority to compel the family's acceptance of the plan–a point it is required to explain to the family–the agency does have the discretion to "explain its concomitant authority to petition the Circuit court under the Juvenile Court Act" or refer the case to a local authority for criminal prosecution. 325 ILCS 5/8.2 (West 2010). Noncompliance with service plans can further be the basis for a finding of parental unfitness under the Adoption Act. 750 ILCS 50/1(D)(m) (West 2010); see *In re Jaron Z.*, 348 Ill. App. 3d 239, 259 (2004).

¶ 36 Here, we have no evidence that respondent made any progress toward obtaining custody of M.I. during the relevant nine-month period. Respondent does not assert that he made progress. Rather, he argues that the trial court committed reversible error in finding him unfit on this count. Respondent points out that the State's evidence at the fitness hearing substantially consisted of evidence related to times outside the relevant nine-month period. Appellate counsel also concedes that the trial court stated on the record it found respondent failed to make progress during the relevant nine-month period, but argues–without citing case law–that the court further had a duty to affirmatively announce it disregarded the evidence from outside the time period when making this ruling.

¶ 37 The trial court specified the nine-month period (August 1, 2013, to May 1, 2014) in which respondent failed to make reasonable progress toward M.I.'s return home before making its ruling. This specific recitation of the relevant dates is evidence the trial court considered evidence from the appropriate timeframe when making its ruling. The evidence from outside the nine-month timeframe was mentioned for a separate reason. The State simultaneously petitioned to terminate respondent's parental rights to M.I. on the grounds that he failed to maintain a reasonable degree of interest, concern or responsibility for her. Unlike the allegation based on section 1(D)(m), the evidence reviewed for allegations under section 1(D)(b) is not limited to any particular timeframe. See, *e.g.*, *In re Jaron Z.*, 348 Ill. App. 3d at 259-60. Thus, I find no error in the trial court's determination that respondent was unfit and failed to make reasonable progress toward the return home of M.I.

## III. Respondent's ADA Compliance Claim

Respondent also claims his failure to make reasonable progress on this count was caused by DCFS. Respondent argues DCFS's failure to provide him with reasonable accommodations and services, in light of his disabilities, is a violation of the ADA and–for the first time on appeal–section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794 (2012)). Respondent does not even cite the relevant statutes when making this argument. Furthermore, he does not assert a factual scenario whereby he would have been properly accommodated. Respondent merely asserts DCFS was "in violation of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973" without further reference to any authority.

"Questions not raised in the trial court cannot be argued for the first time on appeal." *Parks v. Kownacki*, 193 Ill. 2d 164, 180 (2000) (citing *Ragan v. Columbia Mutual Insurance Co.*, 183 Ill. 2d 342, 355 (1998)). Thus, respondent has forfeited the latter argument relating to the Rehabilitation Act of 1973–whatever it was. Additionally, Illinois Supreme Court Rule 341(h)(7) (eff. Feb. 6, 2013) requires an appellant to cite authority in support of his or her argument. Respondent does not comply with Rule 341 (Ill. S. Ct. R. 341 (eff. Feb. 6, 2013)) when arguing either alleged federal statutory violation involved in this issue. Therefore, respondent has forfeited the issue. *People v. Clinton*, 397 Ill. App. 3d 215, 223-24 (2009).

In the interest of thoroughness, I would address respondent's claim on the merits–to the extent possible–as if it were free from procedural defect. Under section 1(D)(p) of the Adoption Act, a parent can be found unfit for their "[i]nability to discharge parental responsibilities [when] supported by competent evidence *** of mental impairment, mental illness or an intellectual disability *** and there is sufficient justification to believe that the inability to discharge parental responsibilities shall extend beyond a reasonable time period." 750 ILCS 50/1(D)(p) (West 2010).

Respondent's argument, as I understand it, is essentially that the State found him unfit incorrectly, *not* unjustifiably. Not even the respondent himself asserts that he can or will ever be able to care for M.I. Respondent maintains that his lack of mental capacity is the cause for his failure to cooperate with DCFS, comply with their service plans, abstain from illegal drug use, or regularly visit his child. The determination of a parent's reasonable progress is an objective standard unconcerned with their level of effort and ability. *In re D.D.*, 309 Ill. App. 3d 581, 589 (2000), *aff'd*, 196 Ill. 2d 405 (2001). Section 1(D)(p) of the Adoption Act does not preclude the State from petitioning to revoke respondent's parental rights on other grounds. Regardless of whether the State petitioned to terminate respondent's rights under section 1(D)(p), we can affirm the trial court's finding on the other grounds alleged by the State. "[A] finding of parental unfitness may be based on evidence sufficient to support any *one* statutory ground, even if the evidence is not sufficient to support other grounds alleged." (Emphasis in original.) *In re C.L.T.*, 302 Ill. App. 3d 770, 772 (1999) (citing *In re J.A.S.*, 255 Ill. App. 3d 822, 825 (1994)); see also s*upra* ¶ 9.

A trial court's finding of unfitness can only be deemed against the manifest weight of the evidence by a reviewing court if the opposite conclusion is clearly evident from a review of the evidence presented. *In re C.L.T.*, 302 Ill. App. 3d at 772. That is not the case here. The manifest weight of the evidence established that respondent was either unable or unwilling to make reasonable progress toward the return of M.I. to a home and he further failed to maintain a

reasonable degree of interest, concern, or responsibility for her. That the cause may be related to respondent's mental health does not change these facts.

¶ 44     The majority opines that respondent is a victim in this case, noting that "[n]o modifications were made that might have allowed J.B. to be compliant with any of the tasks he was ordered to complete." *Supra* ¶ 20. Like the trial court, however, I assert that "services could not be modified for someone who was not willing to show up." *Supra* ¶ 9. The majority further asserts that the State "did nothing to address J.B.'s particular situation." *Supra* ¶ 21. Yet again, the majority cites no authority that mandates the State to incur such a duty. Short of forcing respondent to do something against his will, there are no conceivable accommodations that could be made to assist him in completing these elementary tasks. Moreover, the trial court further noted respondent's consistent and polite attendance at court proceedings before finding him unfit. This is evidence that respondent is, on some level, capable of showing up for appointments and participating in proceedings.

¶ 45     The State's failure to allege respondent was unfit under section 1(D)(p) does not render the trial court's ruling on the other grounds against the manifest weight of the evidence. The majority cites no case law for this proposition and, in fact, cites case law for the opposite. *Supra* ¶ 12 ("Any one ground of unfitness that is proven is sufficient for an unfitness finding."). How then does the failure to allege one ground of unfitness block the State from alleging unfitness on other grounds or nullify the trial court's findings?

¶ 46     The majority's holding creates an obligation for the State that does not exist, needlessly delaying M.I.'s adoption process. Testimony established that respondent operates at a kindergarten to third grade level and will never be able to parent M.I. It is indeed sad that M.I.'s father is either incapable or unwilling to be a parent–whatever the reason. Unfortunately, respondent failed to make reasonable progress toward the return of M.I. to home from August 2013 to May 2014 and failed to maintain a reasonable degree of interest, concern or responsibility in M.I.'s welfare. As the majority points out, respondent is never going to be capable of parenting M.I. independently. *Supra* ¶ 21. So, what is the point of a remand, other than delay? It is time to allow M.I. to move on with her life. Presently, M.I. has foster parents with whom she has bonded. They have provided M.I. with a home and family structure for a couple of years now, which includes one of her biological siblings. Her foster parents are ready, able, and willing to adopt both children. Reviewing courts need to consider the judicial inefficiency their decision may cause and allow minors to find a permanent home under such circumstances. *In re J.L.*, 236 Ill. 2d at 344-45.

¶ 47          IV. Failure to Maintain a Reasonable Degree of Interest, Concern or Responsibility

¶ 48     In order to find a parent unfit under section 1(D)(b) of the Adoption Act (750 ILCS 50/1(D)(b) (West 2014)), the trial court must find by clear and convincing evidence that the parent failed to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare. See *In re Adoption of L.T.M.*, 214 Ill. 2d 60 (2005). A parent's cooperation with social service agencies and service plan objectives can be considered as evidence of a parent's interest, concern or responsibility as to a minor. *In re Jaron Z.*, 348 Ill. App. 3d at 259. Furthermore, a finding of unfitness based upon a failure to maintain a reasonable degree of interest, concern or responsibility for a minor's welfare can be based upon a parent's failure to complete treatment for drug or alcohol problems. *In re C.L.T.*, 302 Ill. App. 3d at 777.

¶ 49    The evidence that respondent failed to maintain a reasonable degree of interest, concern or responsibility as to M.I. is overwhelming. Respondent had been on notice that he needs to cooperate with DCFS since October of 2010. As noted previously, respondent never complied–or even feigned an attempt to comply–with DCFS. Respondent's only finding in DCFS reports were that he failed to make reasonable efforts. M.I. was removed from her mother's home in October 2013 and her return to her mother or respondent was contingent upon the parents' cooperation with DCFS. In spite of this, respondent declined to cooperate with DCFS and the other social service agencies involved. Respondent submitted to zero drug tests, completed no drug and alcohol evaluation and, to date, shows no signs of stability. Accordingly, the trial court's finding that respondent failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of M.I. was not against the manifest weight of the evidence.