# Illinois Official Reports

## Appellate Court

---

*In re Jeanette L.*, 2017 IL App (1st) 161944

---

| | |
|---|---|
| Appellate Court Caption | *In re* Jeanette L., a Minor, Respondent-Appellee (The People of the State of Illinois, Petitioner-Appellee, v. Georgina L., and Clarence M., Respondents-Appellants). |
| District & No. | First District, Sixth Division<br>Docket Nos. 1-16-1944, 1-16-2053 cons. |
| Rule 23 order filed<br>Rule 23 order withdrawn<br>Opinion filed | December 9, 2016<br><br>January 17, 2017<br>January 27, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-JA-1441; the Hon. Demetrios Kottaras, Judge, presiding. |
| Judgment | No. 1-16-1944 Affirmed; No. 1-16-2053 Affirmed. |
| Counsel on Appeal | Amy P. Campanelli, Public Defender, of Chicago (Denise R. Avant, of counsel), for appellant Georgina L.<br><br>Bruce H. Bornstein, of Chicago, for appellant Clarence M.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Nancy Kisicki, and Ashlee Cuza, Assistant State's Attorneys, of counsel), for the People.<br><br>Robert F. Harris, Public Guardian, of Chicago (Kass A. Plain and John David Jarrett, of counsel), guardian *ad litem*. |

JUSTICE DELORT delivered the judgment of the court, with opinion.
Presiding Justice Hoffman and Justice Cunningham concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a hearing, the trial court adjudicated minor-respondent, Jeanette L., to be an abused and neglected minor, and made her a ward of the court. The trial court subsequently found Jeanette L.'s biological parents, respondents Georgina L.[1] and Clarence M., unfit parents and terminated their parental rights. Georgina L. appeals, contending that the trial court's findings should be reversed because the State failed to provide her with reasonable accommodations under the Americans with Disabilities Act of 1990 (ADA) (42 U.S.C. § 12132 (2012)). With respect to Clarence M.'s appeal, his counsel has filed a motion to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), arguing that there are no issues of arguable merit. We consolidated the appeals. For the following reasons, we grant the motion of Clarence M.'s appellate counsel to withdraw, and affirm the judgment of the circuit court in both appeals.

¶ 2                                    BACKGROUND

¶ 3    On February 24, 2010, the State filed a petition for the adjudication of wardship, alleging that then-15-month-old respondent Jeanette L. was abused and neglected pursuant to section 2-3(1)(b) and 2-3(2)(ii) of the Juvenile Court Act of 1987 (705 ILCS 405/2-3(1)(b), (2)(ii) (West 2010)). The State also moved for temporary custody of respondent. The State alleged that the whereabouts of respondent's mother and father were unknown, and that respondent was in the custody of the child's aunt, Frances S.[2] The State further alleged that Frances's residence was "dirty" and had "trash strewn about" it, and that "dog urine and feces[,] and rats" were present. In addition, Frances was not compliant with services offered to her. The petition further alleged that Frances had witnessed another minor in the residence in bed with that other minor's father, and that the minor stated that the father digitally penetrated her. The State subsequently amended its petition based upon a failure to provide necessary care to Jeanette. 705 ILCS 405/2-3(1)(a) (West 2010). The State noted that, on February 26, 2010, Jeanette had been admitted to the hospital weighing only 8.2 kilograms, which hospital personnel indicated was less than the fifth percentile for her age, and she was diagnosed with "non-organic failure to thrive." The State also alleged that her primary care physician had not seen her since April 2009.

¶ 4    On November 10, 2011, after an adjudicatory hearing, the trial court found that Jeanette was abused or neglected on the grounds of a lack of care, exposure to an injurious environment, and being at substantial risk of physical injury. 705 ILCS 405/2-3(1)(a), (1)(b), (2)(ii) (West 2010). On January 20, 2012, the trial court entered a dispositional order, making

---

[1]The mother's name is also spelled "Georgene" and "Georgean" in the record.

[2]Although the parties spell the aunt's first name "Francis," the record repeatedly spells it as "Frances."

Jeanette a ward of the court, finding both parents unable to care for her, and placing Jeanette under the guardianship of the Department of Children and Family Services (DCFS).

¶ 5 On March 5, 2014, the State filed a supplemental petition, seeking the appointment of a guardian with the right to consent to the adoption of Jeanette. The State alleged that both parents were unfit because they failed to make reasonable progress toward the return of Jeanette within nine months after the neglect and abuse adjudication (750 ILCS 50/1(D)(m) (West 2012)). The State further alleged that they failed to maintain a reasonable degree of interest in Jeanette's welfare (750 ILCS 50/1(D)(b) (West 2012)) and failed to protect Jeanette from the injurious environment (750 ILCS 50/1(D)(g) (West 2012)). In addition, the State alleged that Clarence was unfit because he deserted Jeanette for more than three months prior to the commencement of termination proceedings (750 ILCS 50/1(D)(c) (West 2012)) and that Georgina was unfit because she was unable to discharge her parental responsibilities because of developmental disabilities that are likely to extend beyond a reasonable time (750 ILCS 50/1(D)(p) (West 2012)). The following evidence was then presented at trial.

¶ 6 Among the exhibits admitted at trial was DCFS's May 24, 2010, "Integrated Assessment" report on Georgina. That report stated that Georgina had cognitive delays, was illiterate, dropped out of school after the ninth grade, had a history of alcohol abuse, and had two prior drug-related arrests. The trial court also admitted an August 31, 2011, "Initial Clinical Report" from SOS Children's Villages Illinois (SOS), which indicated that Georgina was referred to a therapist to participate in "individual therapy to address the issue[s] that brought this case [in]to the system, including *** developmental delays" and her parenting ability. The report detailed, however, that Georgina was inconsistent in her attendance and had also missed four sessions in a row. Georgina also would fail to call when she had to miss a session.

¶ 7 Saneeta Auster-Golden, a caseworker from SOS, testified that she had been assigned to this case in June 2012 until February 2014. Golden said that, in 2010, the recommendations for Georgina included a psychological evaluation, parenting classes, individual therapy (which Golden said would address Georgina's developmental delays), and visitation. According to Golden, Georgina completed the psychological evaluation and parenting classes. With respect to individual therapy, Golden explained that Georgina began the therapy in 2011 but was discharged in 2012 as unsuccessful. As to visitation, Georgina was frequently late to the twice-weekly supervised visitation and behaved inappropriately. Golden stated that, during the time she was assigned to this case, Georgina failed to complete the recommended services.

¶ 8 In addition, Golden testified that Clarence had not started his recommended individual therapy in 2010, resulting in an "unsatisfactory" rating. This service was still outstanding for Clarence in 2011. Clarence did complete a psychological evaluation in 2012, which concluded that he was unable to parent Jeanette because of his "cognitive level of functioning." Golden further described Clarence's visitation with Jeanette as "very sporadic." Golden said that Clarence was provided with another referral for individual therapy, which he began but did not complete and had not completed in 2014, when Golden was no longer assigned to this case. Golden further did not see any certificates of completion for any services recommended to Clarence other than the psychological evaluation. Clarence also never provided Golden with the name of any individual or any other support system that would be able to assist him in his parenting responsibilities.

¶ 9 Corretta Rivers, another case worker at SOS, testified that she was assigned to this case on April 29, 2014. At that time, Georgina still needed individual therapy but according to Rivers, Georgina refused to participate in therapy and only wanted to visit with Jeanette. Rivers added that Georgina's assigned therapist even offered to meet closer to Georgina's home, but Georgina refused the offer and any further therapy sessions. Georgina also declined any subsequent services because, according to Georgina, she had done all that she needed to do to be reunited with Jeanette.

¶ 10 Rivers testified that, when she was assigned to this case on April 29, 2014, the outstanding required services for Clarence were a psychiatric evaluation and individual therapy. Rivers testified that she had no contact information for Clarence and that the first time she spoke to him was at a May 2014 court appearance. According to Rivers, Clarence informed her that he had moved to Rockford and told her that he would not complete any of the outstanding services because he believed that he had completed all of the services he needed to complete. With respect to visitation, Rivers recounted that there was a scheduled visit that day, and Clarence did visit with Jeanette, but he told her that he was not going to travel from Rockford to Chicago to visit Jeanette and that this was going to be his "last" visit with her. Rivers said that, although she gave Clarence her contact information, he never contacted her since the May 2014 court date. Rivers added that she had sent about three letters to Clarence, stating that he still had to undergo a psychiatric evaluation to obtain reunification with Jeanette, and that the letters also offered him opportunities for visitation with Jeanette. Rivers, however, said that Clarence never contacted her regarding these services. Rivers confirmed that, since her assignment to this case, Clarence has neither expressed a desire to reunify with Jeanette nor requested any reunification services. Rivers added, however, that if Clarence had requested any reunification services, she would have referred him to community-based services.

¶ 11 At the conclusion of the hearing, the trial court found Georgina unfit based upon sections (b) (reasonable progress) and (m) (reasonable degree of interest), but not (p) (mental disability). 750 ILCS 50/1(D)(b), (m), (p) (West 2012). The trial court further found Clarence unfit based upon all grounds. After holding a best interests hearing, the trial court found that it was in Jeanette's best interest to terminate Georgina's and Clarence's parental rights, and did so.

¶ 12 This consolidated appeal followed.

¶ 13 ANALYSIS

¶ 14 Appeal No. 1-16-1944 (Georgina L.)

¶ 15 Georgina's sole contention on appeal is that we must reverse both the trial court's finding that she is an unfit parent and also its termination of her parent rights because the parent-child reunification services that the State required her to complete were not reasonably accommodated to her developmental disability, in violation of the ADA.

¶ 16 At the outset, we find that Georgina has forfeited this claim. At no point during the proceedings below did she or her counsel make a claim that the services were not compliant with the ADA. "A trial judge should have an opportunity to appraise the errors which are asserted to have taken place. It is unfair to charge him with errors in a reviewing court without having brought them to his attention so that a new trial could have been granted if he found it advisable." *Perez v. Baltimore & Ohio R.R. Co.*, 24 Ill. App. 2d 204, 210 (1960); see

also *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 14 ("The purpose of this court's forfeiture rules is to encourage parties to raise issues in the trial court, thus ensuring both that the trial court is given an opportunity to correct any errors prior to appeal and that a party does not obtain a reversal through his or her own inaction." (citing *People v. Denson*, 2014 IL 116231, ¶ 13)). On this basis alone, we may reject Georgina's claim.

¶ 17    Forfeiture aside, however, Georgina's contention of error is meritless. Parental rights termination proceedings are not " ' "services, programs, or activities" ' " that would subject them to the requirements of the ADA. *In re S.R.*, 2014 IL App (3d) 140565, ¶ 28 (quoting *In re B.S*, 693 A.2d 716, 720 (Vt. 1997); accord *In re Adoption of Gregory*, 747 N.E.2d 120 (Mass. 2001). Georgina makes no argument that we should disregard the holding in *S.R.* In any event, a parent's developmental disabilities *per se* are not sufficient grounds to terminate parental rights; rather, developmental disability is a ground for parental unfitness only where "there is sufficient justification to believe that the inability to discharge parental responsibilities shall extend beyond a reasonable time period." 750 ILCS 50/1(D)(p) (West 2012). Here, however, the trial court did not find unfitness on that ground; instead, it relied upon sections (b) (reasonable progress) and (m) (reasonable degree of interest), and there was overwhelming evidence supporting the trial court's findings.

¶ 18    First, Georgina missed several sessions without contacting the therapist. Georgina was required to attend individual therapy, but she never completed this service while Golden was assigned to her case, and when Rivers took over Georgina's case, Georgina completely refused to participate in therapy—even refusing an offer to meet closer to Georgina's home. Georgina indicated that she only wanted to visit with Jeanette, but as to visitation, Golden testified that Georgina was frequently late to the twice-weekly supervised visitation and behaved inappropriately. It is well established that a failure to comply with an imposed service plan and infrequent or irregular visitation with the child may support a finding of unfitness under both sections (b) and (m). See *In re Konstantinos H.*, 387 Ill. App. 3d 192, 204 (2008) (citing *In re Jaron Z.*, 348 Ill. App. 3d 239, 259 (2004) (construing subsection (b))); *In re B'Yata I.*, 2013 IL App (2nd) 130558, ¶ 35 (subsection (m)). We may not disturb the trial court's finding of unfitness it is against the manifest weight of the evidence, *i.e.*, "where the opposite conclusion is clearly the proper result." *In re D.D.*, 196 Ill. 2d 405, 417 (2001). On these facts, we will not reverse the trial court's findings.

¶ 19    Finally, the record reveals that, with respect to Georgina's required services, the State *did* offer accommodations that took her developmental disabilities into account. As noted above, both the August 31, 2011, "Initial Clinical Report" from SOS and also Golden's testimony indicated that Georgina was referred for individual therapy to address, *inter alia*, her developmental delays. On this point, Georgina's reliance upon *In re M.I.*, 2015 IL App (3d) 150403, is unavailing for multiple reasons. At the outset, our supreme court subsequently reversed the third district's holding that "failing to complete a task that is beyond one's intellectual capacity is the same as refusing to comply with court-ordered directives and willfully *** failing to maintain a reasonable degree of interest in the child." (Internal quotation marks omitted.) *In re M.I.*, 2016 IL 120232, ¶¶ 25, 26 (holding that the statute neither contains a "state of mind requirement" nor "carve[s] out an exception for faultless failure"). Second, unlike here, the majority in *M.I.* specifically stated that it was not relying upon the ADA for its holding (*M.I.*, 2015 IL App (3d) 150403, ¶ 16), although the dissenting

justice stated that the parent had made a claim that DCFS violated the ADA (*id.* ¶ 39 (Schmidt, J., dissenting))). The appellate decision in *M.I.* is therefore unavailing.

¶ 20                                    Appeal No. 1-16-2053 (Clarence M.)

¶ 21     Clarence M.'s trial counsel, who represents Clarence on appeal, has filed a motion for leave to withdraw as appellate counsel. A memorandum in support of the motion has been submitted pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), in which counsel concludes that there are no issues of arguable merit on appeal. Copies of the motion and memorandum were sent to Clarence, and he was advised that he might submit any points in support of his appeal. Clarence, however, has not responded.

¶ 22     We have carefully reviewed the record in this case and the aforesaid memorandum, and we find no issues of arguable merit.

¶ 23                                              CONCLUSION

¶ 24     With respect to Georgina's appeal (No. 1-16-1944), we hold that she has forfeited her claim (namely, that the State was required pursuant to the ADA to provide her with reasonable accommodations to the services DCFS required her to complete in order to be reunified with her daughter) because she raised this issue for the first time on appeal. Forfeiture aside, we hold that the ADA does not provide a defense in parental termination proceedings because those proceedings are not programs, services, or activities that would fall under the purview of the ADA. As to Clarence's appeal (No. 1-16-2053), we grant appellate counsel's motion to withdraw because there are no issues of arguable merit. Accordingly, we affirm the judgment of the trial court in both appeals.

¶ 25     No. 1-16-1944 Affirmed.

¶ 26     No. 1-16-2053 Affirmed.