NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220896-U

NO. 4-22-0896

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 21, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* H.H., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Winnebago County |
|     Petitioner-Appellee, | ) | No. 19JA228 |
|     v. | ) | |
| Robert H., | ) | Honorable |
|     Respondent-Appellant). | ) | Francis M. Martinez, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Turner and Steigmann concurred in the judgment.

**ORDER**

¶ 1 *Held*: The appellate court affirmed, concluding the trial court's findings respondent was an unfit parent and it was in the minor's best interest to terminate respondent's parental rights were not against the manifest weight of the evidence.

¶ 2 Respondent father, Robert H., appeals from the trial court's judgment terminating his parental rights to his daughter, H.H. (born August 14, 2017). On appeal, respondent argues the trial court erred in finding (1) he was an unfit parent and (2) it was in the minor's best interest to terminate his parental rights. For the reasons that follow, we affirm the trial court's judgment.

¶ 3        I. BACKGROUND

¶ 4 Respondent and Kristina P. are the minor's biological parents. The parental rights of the minor's mother were also terminated during the proceedings below. She is not, however, a party to this appeal.

¶ 5      A. Motion to Terminate Parental Rights

¶ 6        In August 2022, the State filed a motion to terminate respondent's parental rights. In the motion, the State alleged respondent was an unfit parent in that he (1) failed to maintain a reasonable degree of interest, concern, or responsibility as to the minor's welfare (750 ILCS 50/1(D)(b) (West 2020)) and (2) failed to make reasonable efforts to correct the conditions that were the basis for the removal of the minor during a nine-month period following the minor's adjudication of neglected, namely October 20, 2021, to July 20, 2022 (750 ILCS 50/1(D)(m)(i) (West 2020)). The State further alleged it was in the minor's best interest to terminate respondent's parental rights and appoint the Department of Children and Family Services (DCFS) as guardian with the power to consent to adoption.

¶ 7                                    B. Fitness Hearing

¶ 8        In September 2022, the trial court conducted a fitness hearing. During the hearing, the court heard testimony from two DCFS caseworkers and respondent. In addition, the court was presented with multiple exhibits and took judicial notice of several records. The following is gleaned from the evidence before the court.

¶ 9        In October 2017, an incident of domestic violence occurred between respondent and the minor's mother. The minor was present during the incident. As a result, respondent was convicted of a criminal offense and sentenced to a term of imprisonment. The minor's mother also obtained an order of protection against respondent, which respondent later violated.

¶ 10       In May 2019, the State filed a petition for adjudication of wardship. In the State's petition, the State alleged the minor was neglected in that she was (1) born with cocaine or a metabolite of said substance in her urine, blood, or meconium; (2) subject to an environment injurious to her welfare; and (3) left without supervision for an unreasonable period of time without regard to her health, safety, and welfare. The allegation that the minor was subject to an

environment injurious to her welfare was based, in part, upon the minor's exposure to domestic violence between respondent and the minor's mother. Shortly after the filing of the State's petition, DCFS was granted temporary custody of the minor with the power to place.

¶ 11        In July 2019, respondent participated in an interview for an integrated assessment. During the interview, respondent reported his father was an alcoholic and had been abusive toward respondent and his siblings when they were children. Respondent also reported he started using marijuana and alcohol as a child and then cocaine as an adult. Respondent initially reported he had not used cocaine or marijuana since 2008; however, he later acknowledged using cocaine, as well as alcohol, in May 2019. Respondent's criminal history included convictions for offenses related to drugs, physical assault, and traffic violations. The integrated assessment, which was completed in October 2019, noted respondent "struggled to connect how his history and abuse and neglect and subsequent criminal behavior *** had any impact on his functioning throughout his life *** and how his role as a parent has been and could continue to be impacted." The assessment also noted respondent seemed "to exhibit serious and repeated problems related to disregard of social norms and violation of the rights of others." The assessment recommended respondent abstain from any substances and engage in a substance abuse program, mental health services, and domestic violence services. The assessment also recommended respondent attend and engage in visitations with the minor.

¶ 12        In October 2019, the trial court adjudicated the minor neglected based upon the allegations in the State's petition for adjudication of wardship, made the minor a ward of the court, and placed custody and guardianship with DCFS.

¶ 13        Based upon the integrated assessment, certain service recommendations were issued and incorporated into service plans. As of November 2021, it was recommended respondent

(1) engage in substance abuse services, which included completing a substance abuse assessment and completing random drugs screens to demonstrate abstinence from alcohol and any illegal substances; (2) engage in individual counseling; (3) complete parenting classes; (4) cooperate with DCFS and its representatives; and (5) have no incidents of domestic violence. With respect to the latter, respondent had previously completed domestic violence classes.

¶ 14　　　Throughout 2022, respondent had no reported incidents of domestic violence and had been largely cooperative with DCFS and its representatives.

¶ 15　　　Respondent was referred to a session of parenting classes in early 2022 but was then discontinued from that session for failing to appear. Respondent reported he missed the session due to technology issues. Respondent was referred to another session of parenting classes. Respondent attended and completed the session in April 2022.

¶ 16　　　Respondent was initially not receptive to engaging in individual counseling. Respondent testified he later became receptive after learning the issues addressed in counseling would be different from those issues addressed during the parenting classes. Respondent was referred to individual counseling in early February 2022. Following the referral, a provider called respondent and left him a voicemail about scheduling him for a possible session. A caseworker also texted respondent about the provider needing to speak with him to schedule him for a session. Because the provider never heard from respondent, respondent was not scheduled for any session. He was then placed on a waitlist with that provider. He was also placed on a waitlist with another provider. Respondent testified he was not aware that he was placed on a waitlist with a second provider. A caseworker testified she spoke with respondent about the waitlist with the second provider and had him sign consents related to that provider. Respondent testified he called the first provider and learned he was not on a waitlist. A caseworker testified respondent continued to be

on waitlists for individual counseling at the time of the fitness hearing.

¶ 17 Respondent completed a substance abuse assessment in March 2022. No services were recommended as a result of that assessment. Respondent then failed to attend a drug screen on April 6, 2022. Respondent reported he arrived at the testing facility and was turned away because the facility was closing. He was then directed to return the next day. Respondent did not return. Respondent testified he did not return because the testing facility would not have accepted him. On April 28, 2022, respondent tested positive for tetrahydrocannabinol (THC) on a drug screen. Upon inquiry about the positive result, respondent denied any drug use. As a result of the positive and missed drug screens, it was recommended respondent complete a new substance abuse assessment. Respondent did not complete the new assessment. Respondent failed to attend drug screens on May 26 and June 2, 2022. Respondent testified he did not remember missing the two drug screens but believed he provided explanations for missing those screens, such as work-related conflicts or health issues.

¶ 18 Before the minor could be placed in respondent's care, he had to attain appropriate housing for her. Sometime prior to 2022, respondent began living with his girlfriend and conveyed his intent to a caseworker for the minor to do the same. At that point, the caseworker advised respondent that his girlfriend would have to engage with DCFS prior to the minor being placed in the home with them. Throughout 2022, the minor's caseworkers repeatedly discussed with respondent the need for his girlfriend to engage with DCFS. Despite respondent's reported efforts to get his girlfriend to engage, she did not do so. In April 2022, a caseworker had a conversation with respondent about obtaining separate housing from the girlfriend to overcome the barrier of placing the minor in respondent's care. Respondent continued to live with his girlfriend, and respondent's girlfriend never engaged with DCFS.

¶ 19          Respondent attended supervised visitations with the minor. Overall, the visits went well. Respondent engaged with the minor and showed her affection. Respondent and the minor appeared bonded to each other. Respondent struggled with maintaining consistent attendance at visitations. He missed visits due to reported health and vehicle issues as well as work conflicts. He missed visits because of his positive drug screen. He missed visits due to the failure to confirm his attendance. Respondent also struggled, at least initially, with providing meals for the minor. During a visit, it was reported respondent's girlfriend, who was not authorized to be around the minor, was present. Respondent testified his girlfriend waved at the minor but did not otherwise communicate with her. The visitations never transitioned from supervised to unsupervised.

¶ 20          Respondent testified he had done everything he could to get his daughter back and wanted to get everything completed to do so.

¶ 21          Following the State's closing argument, the trial court observed the State had not alleged a failure to make reasonable progress as a grounds for unfitness in its motion to terminate parental rights, which it found "a bit unusual." Upon inquiry by the court if the absence of such an allegation was a "scrivener's error," the State acknowledged "it was an error" and then moved to amend its motion "to conform with the proofs." Over no objection, the court granted the State's motion. The amended motion to terminate parental rights added the allegation that respondent was an unfit parent in that he failed to make reasonable progress toward the return of the minor to his care within a nine-month period following the adjudication of neglected, namely October 20, 2021, to July 20, 2022 (750 ILCS 50/1(D)(m)(ii) (West 2020)).

¶ 22          The trial court, after considering the evidence and arguments before it, found respondent was an unfit parent for all the reasons alleged in the State's amended motion to terminate parental rights. In reaching its finding, the court noted respondent's "testimony is not

- 6 -

found to be credible as he was successfully impeached by the State on [multiple] issues."

¶ 23                                    C. Best-Interest Hearing

¶ 24            In October 2022, the trial court conducted a best-interest hearing. During the hearing, the court heard testimony from a caseworker and respondent as well as a proffer from a guardian *ad litem*. In addition, the court took judicial notice of prior hearings held in this case as well as a best-interest report. The court also received multiple photographs of the minor with respondent and with her foster family. The following is gleaned from the evidence before the court.

¶ 25            The minor, who was five years old at the time of the best-interest hearing, had been placed with her foster family since May 2019. The minor's foster family included two parents and two half-siblings. The foster parents provided the minor with a safe, nurturing, and stable environment. The minor appeared comfortable in the home and was attached and bonded to the entire foster family. The minor was attending kindergarten. She enjoyed playing with her siblings. She appeared happy. She was healthy and had no behavioral or mental health concerns. The minor looked to her foster parents for support, comfort, guidance, and security. The minor had continued contact with her maternal great-grandmother. The foster parents expressed a commitment to continuing to provide care for the minor.

¶ 26            Respondent and the minor were bonded to each other. The minor referred to respondent as "Daddy." The minor was always excited to see respondent. She would become upset when a visit ended. Respondent sent gifts and pictures to the minor. He would bring toys, food, and drinks to visitations. Respondent showed the minor affection and tried to guide her as a father. Respondent believed the minor belonged in his care and asked for the court to not terminate his parental rights. Respondent acknowledged he had missed recent visitations due to work conflicts and health issues.

¶ 27　　　The agency assigned to monitor the minor's well-being believed it would be in the minor's best interest to terminate respondent's parental rights. The agency did not believe the minor was getting the physical and emotional support needed from respondent, the type of support which was provided by the foster parents. The agency also believed it would be traumatizing to remove the minor from the care of the foster parents.

¶ 28　　　The trial court, after considering the evidence and arguments before it as well as the statutory best-interest factors, found it would be in the minor's best interest to terminate respondent's parental rights. The court entered a written order terminating respondent's parental rights.

¶ 29　　　This appeal followed.

¶ 30　　　　　　　　　　　II. ANALYSIS

¶ 31　　　On appeal, respondent argues the trial court erred in finding (1) he was an unfit parent and (2) it was in the minor's best interest to terminate his parental rights. The State disagrees.

¶ 32　　　　　　　　　　A. Unfitness Finding

¶ 33　　　First, respondent argues the trial court erred in finding he was an unfit parent. Specifically, respondent contends the court's finding is against the manifest weight of the evidence. In addition, respondent contends, to the extent the court's finding was based upon his failure to make reasonable progress, the court erred in suggesting that the State file an amended motion adding that allegation of unfitness and in allowing that filing.

¶ 34　　　In a proceeding to terminate parental rights, the State must prove parental unfitness by clear and convincing evidence. *In re N.G.*, 2018 IL 121939, ¶ 28, 115 N.E.3d 102. A trial court's finding of parental unfitness will not be disturbed on appeal unless it is against the manifest

- 8 -

weight of the evidence. *Id.* ¶ 29. A finding is against the manifest weight of the evidence "only where the opposite conclusion is clearly apparent." *Id.*

¶ 35 The trial court found respondent was an unfit parent as defined in section 1(D)(b) of the Adoption Act (750 ILCS 50/1(D)(b) (West 2020)). Section 1(D)(b) states a parent will be considered an "unfit person" if he or she fails "to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare." *Id.* Because the language of section 1(D)(b) is in the disjunctive, a parent may be found to be unfit by failing to maintain a reasonable degree of "either interest, or concern, or responsibility; proof of all three is not required." *In re Richard H.*, 376 Ill. App. 3d 162, 166, 875 N.E.2d 1198, 1202 (2007).

¶ 36 In determining whether a parent showed a reasonable degree of concern, interest, or responsibility as to a child's welfare, the court must examine "the parent's conduct concerning the child in the context of the circumstances in which that conduct occurred." *In re Adoption of Syck*, 138 Ill. 2d 255, 278, 562 N.E.2d 174, 185 (1990). "It is well established that a failure to comply with an imposed service plan and infrequent or irregular visitation with the child may support a finding of unfitness under [section 1(D)(b) of the Adoption Act (750 ILCS 50/1(D)(b) (West 2020))]." *In re Jeanette L.*, 2017 IL App (1st) 161944, ¶ 18, 69 N.E.3d 918.

¶ 37 In this case, the evidence presented at the fitness hearing supports the trial court's finding that respondent was an unfit parent in that he failed to maintain a reasonable degree of responsibility as to the minor's welfare. The evidence shows the minor was taken into DCFS care in May 2019. Three years later, respondent tested positive for THC, failed to attend drug screens, did not complete a recommended substance abuse assessment following his positive drug screen, did not promptly pursue individual counseling, and had inconsistent attendance at visitations. In addition, respondent had not taken the necessary steps to ensure his daughter would have a place

to reside if she was placed in his care. Respondent's efforts arguably did not show a reasonable degree of responsibility as to the minor's welfare.

¶ 38    To counter the evidence presented, respondent initially contends the State did not show substance abuse services and individual counseling were necessary. We disagree. The integrated assessment, which was admitted into evidence at the fitness hearing, describes respondent's history of abusing substances, being abused as a child, and abusing others. This history provides a basis for recommending both substance abuse services and individual counseling.

¶ 39    Respondent also contends he should not be held responsible for his girlfriend's reluctance to engage with DCFS. We disagree. Respondent was responsible for providing his daughter, the minor, with a suitable place to live. While respondent could not force his girlfriend to engage with DCFS, he could have acquired new housing after learning of her refusal to do so.

¶ 40    Last, respondent contends he should not be held responsible for the missed visitations caused by his (1) confusion around a newly implemented confirmation procedure or (2) positive drug screen. We disagree. Initially, we note there was no evidence introduced at the fitness hearing concerning respondent's confusion around the visitation confirmation procedure. In any event, even if respondent had testified to such confusion, the court found respondent not to be a credible witness. Furthermore, respondent is, in fact, directly responsible for any missed visits caused by his positive drug screen.

¶ 41    Given the evidence presented, we conclude the trial court's unfitness finding based on respondent's failure to maintain a reasonable degree of responsibility as to the minor's welfare is not against the manifest weight of the evidence. As only one ground for a finding of unfitness is necessary to uphold the judgment, we need not review the other grounds for the court's unfitness

finding, including respondent's complaint about the court suggesting that the State file an amended motion to terminate parental rights and then allowing that filing. *In re Z.M.*, 2019 IL App (3d) 180424, ¶ 70, 131 N.E.3d 1122.

¶ 42 In reaching this conclusion, we note respondent, particularly in his reply brief before this court, has emphasized the fact the trial court found the State had not established his unfitness following a prior fitness hearing in this case. The court's finding at a prior fitness hearing does not, however, affect whether the evidence before the court at a later fitness hearing is sufficient to establish respondent's unfitness. Again, we conclude the evidence presented at the later fitness hearing was sufficient to support the court's unfitness finding—the court's finding of unfitness was not against the manifest weight of the evidence.

¶ 43                                    B. Best-Interest Finding

¶ 44 Next, respondent argues the trial court erred in finding it was in the minor's best interest to terminate his parental rights. Specifically, respondent contends the court's finding is against the manifest weight of the evidence.

¶ 45 In a proceeding to terminate parental rights, the State must prove termination is in the child's best interests by a preponderance of the evidence. *In re D.T.*, 212 Ill. 2d 347, 367, 818 N.E.2d 1214, 1228 (2004). When considering whether termination of parental rights would be in a child's best interest, the trial court must consider several statutory factors within the context of the child's age and developmental needs. See 705 ILCS 405/1-3(4.05) (West 2020).

¶ 46 This court will not reverse a trial court's finding it was in a minor's best interest to terminate his parental rights unless it is against the manifest weight of the evidence. *In re Anaya J.G.*, 403 Ill. App. 3d 875, 883, 932 N.E.2d 1192, 1199 (2010). Again, a finding is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent. *Id.*

¶ 47        In this case, the evidence presented at the best-interest hearing supports the trial court's finding that it was in the minor's best interest to terminate respondent's parental rights. The evidence shows the minor, who was five years old at the time of the best-interest hearing, had lived with her foster family for almost three and a half years. The minor was bonded to her foster family, which included two half-siblings, and her needs were being met. Conversely, respondent had not completed the recommended services, had inconsistent attendance at visitations, and did not have suitable housing for the minor. While the minor's bond with respondent and respondent's desire to have the minor placed in his care were relevant considerations, the court had to weigh those considerations and then balance them with the minor's need for permanency and continuity. Given the evidence presented, we conclude the trial court's finding it was in the minor's best interest to terminate respondent's parental rights is not against the manifest weight of the evidence.

¶ 48                        III. CONCLUSION

¶ 49        For the reasons stated, we affirm the trial court's judgment.

¶ 50        Affirmed.