NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 230019-U

NOS. 4-23-0019, 4-23-0020, 4-23-0021 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 5, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* Azy. A., Ash. A., and Aza. A., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Winnebago County |
| Petitioner-Appellee, | ) | Nos. 21JA272 |
| v. | ) | 21JA273 |
| JC A., | ) | 21JA274 |
| Respondent-Appellant). | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Francis M. Martinez, |
| | ) | Judge Presiding. |

---

PRESIDING JUSTICE DeARMOND delivered the judgment of the court.
Justices Steigmann and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court granted appellate counsel's motion to withdraw and affirmed
the circuit court's judgment, finding no issue of arguable merit could be raised on
appeal.

¶ 2    In July 2021, the State filed a petition for adjudication of neglect regarding Azy.
A., Ash. A., and Aza. A., the minor children of respondent father, JC A. (Father). The circuit
court granted the petition, adjudicating the children neglected and making them wards of the
court. In September 2022, the State filed a motion to terminate Father's parental rights. The court
found Father to be an unfit parent pursuant to section 1(D) of the Adoption Act (750 ILCS
50/1(D) (West 2020)) and it was in the children's best interests to terminate Father's parental
rights.

¶ 3         In February 2023, we granted Father's appointed appellate counsel's motion to consolidate the children's respective cases into one appeal. Later that month, appellate counsel filed a motion to withdraw as counsel and a supporting brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), arguing no meritorious issue could be raised on appeal. For the following reasons, we grant the motion to withdraw and affirm the circuit court's judgment.

¶ 4                              I. BACKGROUND

¶ 5         On July 20, 2021, the State filed petitions alleging Azy. A., Ash. A., and Aza. A. were neglected minors and their environment was injurious to their welfare because their parents left them in the care of a mentally ill relative, who struck Azy. A. repeatedly in the abdomen.

¶ 6         On February 22, 2022, the circuit court adjudicated the children neglected and made them wards of the court. Father failed to appear at the hearing, despite receiving service by publication, and he refused to communicate with the Department of Children and Family Services (DCFS).

¶ 7         In March 2022, the children's mother died after being struck by a vehicle.

¶ 8         On September 20, 2022, the State moved to terminate Father's parental rights, alleging Father failed to maintain a reasonable degree of interest, concern, or responsibility as to the children's welfare and that he abandoned them. 750 ILCS 50/1(D)(a), 1(D)(b) (West 2020).

¶ 9         During the December 12, 2022, hearing on the motion to terminate, Marcus Hill, the caseworker assigned to the children's respective cases in March 2022, testified Father had minimal contact with DCFS. Hill was able to reach Father's mother and schedule a meeting with Father on April 24, 2022. However, Father did not attend the meeting. Hill eventually had phone conversations with Father on June 20, 2022, and July 28, 2022. Father said he wanted to visit the children, but he did not do so because he was wanted on an outstanding warrant for his arrest.

Hill told Father the children were living with their maternal aunt, who was also their foster parent, and the aunt was willing to facilitate visits between Father and the children.

¶ 10        Hill testified that another DCFS employee created a service plan for Father, requiring Father to complete parenting classes, domestic violence counseling, and substance abuse counseling and comply with drug tests. Father was also required to maintain monthly, in-person contact with Hill. Father failed to participate in or complete any services, did not submit to drug testing, spoke with Hill sparingly, and visited the children just once during the case's pendency.

¶ 11        Hill did not meet Father in-person until a court hearing on September 20, 2022. Father then failed to attend an agreed-upon meeting on September 22, 2022, or complete an integrated assessment. The meeting was rescheduled for October 13, 2022, and while Father did appear, he did not answer all the assessment's questions, and he left the meeting early.

¶ 12        Father did not provide for the children's needs or well-being, and he did not give them food, shelter, or gifts. He did not attend their doctor's appointments or parent/teacher conferences. According to Hill, DCFS was concerned about Father's ability to parent because he chose not to participate in the children's lives despite the fact they all lived in the same city.

¶ 13        The circuit court found Father to be an unfit parent, holding the State proved by clear and convincing evidence Father failed to maintain a reasonable degree of interest, concern, or responsibility.

¶ 14        The matter proceeded to a best interest hearing, where Father testified the caseworkers did not ask him to complete any services, and he did not visit the children because he feared being arrested on his outstanding warrant. Father testified he had a good relationship with the children and that he did everything he could for them. On cross-examination, Father

acknowledged the children were previously subject to a DCFS case in 2018, after which they were placed in their mother's care.

¶ 15        Mary Cacciapaglia, the guardian *ad litem*, proffered she conducted a home visit with the children on July 19, 2022. The two older children told Cacciapaglia they wanted to be adopted by their aunt and stay with her "forever." The oldest child had Father's cell phone number and texted him a few times, but she "hadn't got much of a response." The oldest child was no longer interested in reaching out to Father "and wanted to wait until he made the effort." Cacciapaglia observed the youngest child, who was three years old at the time, pretending to do her aunt's hair. The youngest child "clearly felt comfortable in the house," and, according to their aunt, the youngest child had "kind of taken over the house." The aunt wished to adopt the minor children.

¶ 16        The circuit court found the State proved by a preponderance of the evidence the best interest factors favored terminating Father's parental rights. In doing so, the court highlighted the close relationship between the children and their aunt, the comfort the children experienced with their aunt, the level to which the children were integrated into their aunt's family, and the children's respective desires to continue living with their aunt.

¶ 17        This appeal followed.

¶ 18                                II. ANALYSIS

¶ 19        On appeal, Father's appointed appellate counsel filed a motion seeking leave to withdraw as counsel pursuant to *Anders*. Father did not file a response. Appellate counsel argues no meritorious issue of procedure or substance can be raised on appeal. We agree and grant the motion to withdraw as counsel.

¶ 20 The Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/1-1 *et seq.* (West 2020)) and the Adoption Act (750 ILCS 50/1 *et seq.* (West 2020)) govern how the State may terminate parental rights. *In re D.F.*, 201 Ill. 2d 476, 494, 777 N.E.2d 930, 940 (2002). To terminate an individual's parental rights, the State must first show the parent is an "unfit person," and then the State must show terminating parental rights serves the child's best interest. *D.F.*, 201 Ill. 2d at 494-95 (citing the Adoption Act (750 ILCS 50/1(D) (West 1998)) and the Juvenile Court Act (705 ILCS 405/2-29(2) (West 1998))).

¶ 21 A. Unfitness Finding

¶ 22 "The State must prove parental unfitness by clear and convincing evidence, and the trial court's findings must be given great deference because of its superior opportunity to observe the witnesses and evaluate their credibility." *In re T.A.*, 359 Ill. App. 3d 953, 960, 835 N.E.2d 908, 913 (2005). "We will not reverse a trial court's finding of parental unfitness unless it was contrary to the manifest weight of the evidence, meaning that the correctness of the opposite conclusion is clearly evident from a review of the evidence." *T.A.*, 359 Ill. App. 3d at 960.

¶ 23 Subsection (b) of the Adoption Act provides that a circuit court may find a parent unfit for failing to maintain a reasonable degree of interest, concern, or responsibility as to the child's welfare. 750 ILCS 50/1(D)(b) (West 2020). "Because subsection (b) is phrased in the disjunctive, any of the three elements may be considered on its own as a basis for unfitness." (Internal quotation marks omitted.) *In re J.B.*, 2014 IL App (1st) 140773, ¶ 51, 19 N.E.3d 1273. When examining allegations under subsection (b), a circuit court must focus on the parent's reasonable efforts and consider any circumstances that may have made it difficult for the parent to visit, communicate with, or otherwise show interest in the child. *In re Jaron Z.*, 348 Ill. App. 3d 239, 259, 810 N.E.2d 108, 124-25 (2004). However, a parent must show a reasonable amount

of interest, concern, or responsibility—a demonstration of "some interest or affection" toward the child is not enough. *Jaron Z.*, 348 Ill. App. 3d at 259. "It is well established that a failure to comply with an imposed service plan and infrequent or irregular visitation with the child may support a finding of unfitness under *** section[ ] (b)." *In re Jeanette L.*, 2017 IL App (1st) 161944, ¶ 18, 69 N.E.3d 918 (citing *In re Konstantinos H.*, 387 Ill. App. 3d 192, 204, 899 N.E.2d 549, 559 (2008)).

¶ 24    Here, appellate counsel contends there is no meritorious issue to raise on appeal regarding the circuit court's fitness finding. The record shows Father visited the children just once from the time Hill became involved in the case in March 2022 until the fitness hearing in December 2022, despite knowing he was entitled to visitation, and that the children's aunt, who was also their foster parent, was willing to facilitate visits. Father refused to maintain consistent communication with Hill or DCFS, and Father did not meet with Hill in-person until a hearing in September 2022, six months after Hill joined the case. Hill informed Father he was required to complete parenting classes, domestic violence counseling, and substance abuse counseling and comply with drug tests. However, Father did not engage in any services, nor did he submit to drug testing. Father lived in the same city as the children but chose not to participate in their lives. Based on the evidence presented at the fitness hearing, the court's finding that Father failed to maintain a reasonable degree of interest, concern, or responsibility regarding the children's welfare was not against the manifest weight of the evidence, as the opposite conclusion is not clearly evident. See *T.A.*, 359 Ill. App. 3d at 960.

¶ 25                                    B. Best Interest Finding

¶ 26    After a parent is found unfit, "the focus shifts to the child." *In re D.T.*, 212 Ill. 2d 347, 364, 818 N.E.2d 1214, 1227 (2004). The issue ceases to be "whether parental rights *can* be

- 6 -

terminated" and becomes "whether, in light of the child's needs, parental rights *should* be terminated." (Emphases in original.) *D.T.*, 212 Ill. 2d at 364. The circuit court will consider the factors set forth in section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2020)). See *T.A.*, 359 Ill. App. 3d at 959-60. Those factors include: the child's physical safety and welfare; the development of the child's identity; the child's familial, cultural, and religious background and ties; the child's sense of attachments, including where the child feels loved, attached, and valued; the child's sense of security, familiarity, and continuity of affection; the child's wishes and long-term goals; the child's community ties; the child's need for permanence; and the uniqueness of every family and each child. 705 ILCS 405/1-3(4.05) (West 2020). We will not overturn a court's best interest finding unless it is against the manifest weight of the evidence. *In re Jay. H.*, 395 Ill. App. 3d 1063, 1071, 918 N.E.2d 284, 291 (2009).

¶ 27         Appellate counsel contends no meritorious issue can be raised on appeal to challenge the circuit court's best interest finding. The evidence shows the best interest factors, including the children's physical safety and welfare, their senses of attachment and security, their need for permanence, and their expressed wishes, support the termination of Father's parental rights. The children lived with their maternal aunt, who provided for their physical, emotional, and social needs, and who was willing to adopt them. According to the guardian *ad litem*, the two older children wished to be adopted by their aunt and stay with her "forever," and the youngest child "clearly felt comfortable in the house." When the guardian *ad litem* spoke with the maternal aunt, she observed the youngest child's comfortable interactions with the foster parent, and she was told by the aunt the youngest child had "kind of taken over the house." Conversely, Father visited the children just once during the case, failed to communicate with the oldest child when she contacted him via text message, and did nothing to provide for the

children's needs or well-being. The oldest child no longer wished to contact Father "and wanted to wait until he made the effort."

¶ 28        The circuit court's best interest decision was not against the manifest weight of the evidence, as the opposite conclusion was not clearly evident. See *T.A.*, 359 Ill. App. 3d at 960. We agree with appellate counsel. Based on this record, there are no meritorious arguments which could be raised on appeal to reasonably claim the court abused its discretion in finding Father unfit and it was in the children's best interests to terminate Father's parental rights.

¶ 29                     III. CONCLUSION

¶ 30        For the foregoing reasons, we grant appellate counsel's motion to withdraw as counsel because no meritorious argument can be raised on appeal, and we affirm the circuit court's judgment.

¶ 31        Affirmed.